## Algernon DOBY *v.* JEFFERSON COUNTY CIRCUIT COURT

CR 02-346 88 S.W.3d 824

Supreme Court of Arkansas
Opinion delivered November 7, 2002

[Petition for rehearing denied December 19, 2002.]

506

*Janice Vaughn* and *Elizabeth S. Johnston*, Arkansas Public Defender Commission, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Petitioner Algernon Doby petitions this court for a writ of prohibition barring the Jefferson County Circuit Court from proceeding to trial on the charges against him of capital murder, attempted capital murder, and theft of property. The grounds for the petition are (1) an alleged violation of his right to a speedy trial, as provided under Arkansas Rules of Criminal Procedure 28.1 through 28.3, and (2) an alleged violation of his right to counsel as guaranteed by the Sixth Amendment to the United States Constitution. We hold that due to excluded periods of time chargeable to Doby, a violation of his right to a speedy trial has not occurred. Accordingly, we deny the petition.

On July 7, 1999, the Jefferson County prosecutor filed a criminal information against Doby, charging him with murder in the first degree, battery in the first degree, and felon in possession of a firearm. The prosecutor asserted in the information that Doby killed Raymond Eugene Johnson and caused serious physical injury to Tamika Tyler by means of a firearm. The date listed for each offense was July 6, 1999. Also, on July 7, 1999, a bench warrant was issued for Doby's arrest. On July 15, 1999, the murder charges were upgraded to capital murder and criminal attempt to commit capital murder. Doby was charged again with felon in possession of a firearm, and a theft-of-property charge was added to the criminal information. Doby fled the jurisdiction.

On September 30, 1999, pursuant to a motion by the prosecution, the trial court appointed the State Public Defender to represent Doby, though he had not been apprehended at that time. The reason for the appointment was so that the prosecutor could depose the victim, Tamika Tyler. At that time, Tyler feared for her life, and it was believed that deposing her, as a critical witness for the State, was necessary, because Doby was still at large. In its order, the trial court said: "The Public Defender is further instructed to inform the Court upon the Defendant acquiring substitute counsel." On October 6, 1999, Teri Chambers, a public defender, filed a motion for discovery on behalf of Doby and requested that the prosecution disclose all relevant information. The prosecutor responded with reference to the office's standard "open-file" policy, which allowed defense counsel to inspect the prosecutor's file following one hour's notice.

On or about May 2, 2000, the prosecutor learned that Doby was in jail in Texas. On May 4, 2000, Arkansas authorities obtained custody of Doby and returned him to this state. His arraignment was then set for June 5, 2000, before the Jefferson County Circuit Court. At the arraignment on that date, Doby refused representation by the public defender and requested a continuance in order to retain private counsel. The trial court granted a continuance until July 10, 2000. On July 10, 2000, Doby appeared before the circuit court and again requested additional time to retain private counsel. Another continuance was granted until August 7, 2000. On August 7, 2000, Doby still had

not retained counsel, and the circuit court denied him a third continuance and set November 2, 2000, as the trial date.

On August 23, 2000, the prosecutor moved to exclude from speedy-trial calculations the period of time between July 7, 1999, and November 2, 2000. The prosecutor based her claim for exclusion on the fact that Doby had delayed his prosecution by, first, fleeing the jurisdiction and, secondly, by repeatedly requesting continuances in order to hire private counsel.

On October 13, 2000, the circuit court held a hearing on the prosecutor's motion to exclude time. At that hearing, the trial court inquired into whether Doby had retained counsel. Doby answered that he was still unrepresented and that, as of that date, he was unable to afford counsel. In answer to the circuit court's concern that Doby had previously refused representation by the public defender's office, he replied that he did not believe he could receive a fair trial with the public defender representing him. When the circuit court asked him why, he stated that after he returned from Texas, a woman from the public defender's office who said she was his lawyer had come to his jail cell to ask him questions. Doby told the court that he had informed her that he did not want to speak with her, because he needed to speak with a lawyer. (Presumably, Doby's reference was to retained counsel). Upon hearing this, the woman said that obtaining a lawyer was in his best interests and left.

During the October 13, 2000 hearing, the circuit court declared Doby to be indigent and appointed the public defender's office to represent him. Doby did not refuse this representation. As the hearing proceeded, Doby asked the court about a motion he claimed that he had filed asking the prosecutor to send him "my evidence under the prosecutor's obligation." He said that the prosecutor had not responded to his motion and that the "court clerk" had told him that his discovery motion was filed on June 20, 2000. The circuit court mentioned the prosecutor's "open file" policy and further stated that the problem Doby had encountered was that he was in jail and, thus, unable to go to the prosecutor's office and inspect the file. The trial court said in reference to discoverable material: "Had you had an attorney, that would have

already been in hand and you would have already had a copy [of the file] from your attorney."

The trial court then ruled that the period from July 7, 1999, through November 2, 2000, was excluded for purposes of speedy-trial calculations, because Doby was absent from the jurisdiction from July 7, 1999, until May 4, 2000, and that time was properly chargeable to him. The circuit court did not specifically refer to the time between May 4, 2000, and June 5, 2000, the date Doby was arraigned. However, the circuit court did say that the two periods during which Doby appeared in court and requested continuances, June 5, 2000, to July 10, 2000, and June 10, 2000, to August 7, 2000, were chargeable to Doby. For the time period between August 7, 2000, and November 2, 2000, the circuit court found that Doby's failure to procure counsel and his appearance without counsel on the day the arraignment was reset, which was August 7, 2000, were reasons enough to charge this period to Doby. Following the hearing, the court entered an order excluding the entire period from July 7, 1999, to November 2, 2000, for speedy-trial purposes and charging it to Doby.

During the October 13, 2000 hearing, the circuit court asked Doby if he believed that the public defender could be prepared for trial by November 2, 2000, given the fact that Doby had not procured private counsel, had refused to proceed *pro se*, and had not cooperated with the public defender previously. Doby responded that he did not believe his appointed attorney would have time to prepare. Following the hearing on October 13, 2000, Teri Chambers, on behalf of the public defender's office, received a copy of the prosecutor's file on Doby.

On October 25, 2000, the public defender's office by Teri Chambers filed a motion to continue Doby's trial set for November 2, 2000. In making this motion, she argued that Doby had not received complete discovery from the prosecutor. For that reason, she argued, the time from November 2, 2000, until the new trial date should be charged to the State. On October 26, 2000, the circuit court rescheduled the trial for April 17, 2001, and found that the period of time between November 2, 2000, and April 17, 2001, was charged to the State. However, pursuant

to a motion by the prosecutor filed on December 5, 2000, the circuit court recanted, and on December 28, 2000, it entered an order charging the period from November 2, 2000, through April 17, 2001, to Doby, without specifying its reasons.

On February 28, 2001, the public defender's office by Teri Chambers filed a motion for the circuit court to reconsider charging the period from November 2, 2000, to April 17, 2001, to Doby. Counsel claimed once more that the prosecutor had failed in its obligation to provide her with complete discovery. The prosecutor responded that the prosecuting attorney's office had been diligent in providing discovery, and that, although there were items missing in the office's file, those items had been sought from the Pine Bluff Police Department and would be provided to counsel when available. The items in question were the medical examiner's report, crime lab submissions and reports, the crime scene search report, and photographs of the crime scene. On March 9, 2001, Doby's motion to reconsider was denied.

Doby next moved to sever the charge of felon in possession of a firearm, which was granted. On April 12, 2001, the prosecutor responded with a notice to seek the death penalty, although the death penalty had previously been waived. On April 17, 2001, the circuit court permitted the State to withdraw its waiver of the death penalty. The court also noted that trial of the murder counts would be continued and that this time would be charged to the State. The trial for the murder counts was reset for January 28, 2002.

On October 23, 2001, Doby moved to dismiss the murder charges due to the State's failure to try him within twelve months. On December 14, 2001, the circuit court conducted a hearing on that motion where witnesses were called and testimony was taken. The circuit court denied the motion by order entered on January 23, 2002. On January 29, 2002, the circuit court entered an order in which it memorialized the history of Doby's motion to dismiss for speedy-trial reasons and excluded the time period from December 14, 2001, through January 23, 2002, from speedy-trial calculations.

On January 31, 2002, Doby filed a notice of intent to seek a writ of prohibition from this court due to a violation of his right to a speedy trial. On May 30, 2002, Doby filed his petition for a writ of prohibition in this court.

## I. *Writ of Prohibition*

Doby first contends that his right to a speedy trial was violated and that a writ of prohibition should issue. In *Gamble v. State*, 350 Ark. 168, 85 S.W.3d 520 (2002), this court said:

> Pursuant to Ark. R. Crim. P. 28.1(d), a defendant may bring a petition for a writ of prohibition when the trial court denies the defendant's motion for dismissal under the speedy-trial rules. A writ of prohibition is an extraordinary writ that is only appropriate when the court is wholly without jurisdiction.

*Id.* at 170 (citing *Ibsen v. Plegge*, 341 Ark. 225, 15 S.W.3d 686 (2000)). We further said in *Gamble* that a writ of prohibition will not issue unless it is clearly warranted. *Id.* We added:

> Under Ark. R. Crim. P. 28.1, a defendant must be brought to trial within twelve months unless there are periods of delay which are excluded under Ark. R. Crim. P. 28.3. If the defendant is not brought to trial within the requisite time, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1. Once a defendant establishes a prima facie case of a speedy-trial violation, *i.e.*, that his or her trial took place outside of the speedy-trial period, the State bears the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified.

*Id.* (citing *Turner v. State*, 349 Ark. 715, 80 S.W.3d 382 (2002)). *See also Ibsen v. Plegge, supra.*

In the case before us, Doby was charged on July 7, 1999. On October 23, 2001, Doby filed a motion to dismiss for violation of his speedy-trial rights. The date the speedy-trial motion is filed by a defendant tolls the running of the time for a speedy trial under our rules. *See Moody v. Arkansas County Circuit Court*, 350 Ark. 176, 85 S.W.3d 534 (2002); *Ibsen v. Plegge, supra.* The time between June 7, 1999, and October 23, 2001, is 839 days. Eliminating 365 days, this leaves at least 474 days that must be chargea-

ble to Doby in order for a violation of Rule 28.1 not to occur. By establishing a period of delay beyond twelve months from the date of the charge, the petitioner has made a *prima facie* case for a speedy-trial violation. Because Doby fled the jurisdiction, the 300-day period from July 7, 1999, to May 2, 2000, is an excludable period that Doby has not challenged in his petition.

a. *May 2, 2000, to May 4, 2000 — 2 Days.*

Doby urges that this two-day period must be charged to the State, because he was available for transportation back to Arkansas on May 2, 2000, once he was located in Texas. Doby further asserts that neither the circuit court nor the prosecutor attempted to provide legal justification for charging the two days to Doby. On appeal, the State makes no argument with respect to this precise time period.

Doby cites *Horn v. State*, 294 Ark. 464, 743 S.W.2d 814 (1988), for the proposition that the speedy-trial clock should have commenced running against the State on May 2, 2000, the day Doby was available for transportation from Texas, rather than May 4, 2000, the day the State of Arkansas took custody of him. In *Horn*, the defendant was sought in California on charges of failure to pay child support. *Id.* He was arrested in California on the Arkansas charge, and at the time, he was a resident of California. *Id.* Thus, he was rightfully in that State because of his residence. The issue then arose whether the State of Arkansas should be charged for the time it took to transport Horn from California to Arkansas. *Id.* We noted that the defendant was not in California to resist appearance for trial in Arkansas. We next made it clear that " . . . we have placed responsibility on the defendant to be available for trial, excluding such time delays as result from his resisting appearance for trial." *Id.* at 467, 743 S.W.2d at 816. *See also* Ark. R. Crim. P. 28.3(e) ("A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for the trial cannot be obtained or he resists being returned to the state for trial."). The *Horn* case is simply inapposite due to the distinguishing factual circumstances of that case.

■ In this case, Doby fled the jurisdiction to evade capture. That differs from a case where authorities are searching for a defendant and find him in another state where he has his legal residence. There is no evidence in the record that Doby had his residence in Texas. Because of this, we conclude that the period from May 2, 2000, through May 4, 2000, should be charged to him, because he was in Texas as part of his plan to resist apprehension.

■ While Doby became available for transportation on May 2, 2000, when Arkansas authorities learned of his arrest in Texas, he was not available for trial until he was brought back into the state. It cannot be said that the authorities were not diligent in procuring his attendance in this state two days after learning of his whereabouts. We conclude that the two days that were necessary to transport him back to Arkansas should be charged to Doby.

b. *May 4, 2000, to June 5, 2000 — 32 Days.*

■ Once the Arkansas authorities had brought Doby back to this state, Doby was available for trial. This means that the time from May 4, 2000, to June 5, 2000, should not be excluded and should be charged to the State. This period of time totals thirty-two days.

c. *June 5, 2000, to August 7, 2000 — 63 Days.*

■ On June 5, 2000, and again on July 10, 2000, Doby appeared at his scheduled arraignments and requested continuances in order to retain private counsel. This time period until August 7, 2000, which totals sixty-three days, is clearly chargeable to Doby under Ark. R. Crim. P. 28.3(c), which excludes:

> (c) The period of delay resulting from a continuance granted at the request of the defendant or his counsel. All continuances granted at the request of the defendant or his counsel shall be to a day certain, and the period of delay shall be from the date the continuance is granted until such subsequent date contained in the order or docket entry granting the continuance.

Ark. R. Crim. P. 28.3(c).

d. *August 7, 2000 to October 26, 2000 — 80 Days.*[1]

██ Doby's principal contention for this time period is that the continuance he requested on August 7, 2000, was denied and a trial date was set. Accordingly, based on Ark. R. Crim. P. 28.3(c), he contends that the time should be charged to the State. We agree. Again, Rule 28.3(c) does exclude "the period of delay resulting from a continuance granted at the request of the defendant or his counsel." In this case, however, Doby's request for a continuance was denied, and he apparently intended to go to trial regardless of whether he had counsel or not. Notwithstanding the fact that Doby again appeared without counsel on October 13, 2000, at the hearing on the State's motion to exclude time, this period, which is eighty days, should be charged to the State.

e. *October 26, 2000 to April 17, 2001 — 173 Days.*

On October 25, 2000, Doby moved for a continuance, and his counsel from the public defender's office, which had been appointed on October 13, 2000, asserted an insufficient discovery response from the prosecutor. Doby now argues that despite the fact that it was he who filed the motion for a continuance of the November 2, 2000 trial, the State should be charged with this period of time, because the prosecuting attorney's office had not provided him with certain essential discoverable material in sufficient time to prepare for trial. He further argues that the circuit court misstated the law in proclaiming that he was not personally entitled to discovery. Finally, he urges that only after the public defender's office was appointed on October 13, 2000, did he learn that the prosecutor's file was deficient.

The State argues, to the contrary, that the public defender's office was appointed in September of 1999, and, subsequently, Teri Chambers for that office filed a motion for discovery on

---

[1] There is some confusion about what day the third attempt at Doby's arraignment was made. The circuit court's order of July 10, 2000, states that the hearing was continued until August 7, 2000, but the order entered the day of the hearing identifies the date as August 8, 2000. Both days were weekdays. Because the order of July 10, 2000, and Doby's abstract reflect the actual day of the hearing as August 7, 2000, that is the day this court will use.

October 6, 1999. The State further points out that there is no evidence to suggest that the public defender's office did anything more to complete discovery beyond that motion. The State also emphasizes that Doby stated at the October 13, 2000 hearing that he did not believe his counsel could be prepared for trial by November 2, 2000. There is finally the fact that Teri Chambers, on behalf of the public defender's office, filed a formal motion to continue the November 2, 2000 trial on October 25, 2000.

We agree with the State that Rule 28.3(c), as already noted, excludes a period of delay resulting from a defendant's request for a continuance. Doby's appointed counsel moved for a continuance of the trial on October 25, 2000, and an order was entered to that effect the next day. The trial was then rescheduled for April 17, 2001. Without question, that period of time should ordinarily be charged to Doby.

Doby's counsel, however, fervently maintains that the facts do not support charging this time to Doby, because the State was delinquent in completing discovery and that necessitated the continuance request. We note on this issue that the State makes a telling point. Despite Teri Chambers's testimony that she began to represent Doby officially as a public defender on October 13, 2000, the State Public Defender was in fact appointed as Doby's counsel on September 30, 1999. Furthermore, despite the fact that this initial appointment was for the limited purpose of taking Tamika Tyler's deposition, Teri Chambers filed a motion for discovery for Doby on behalf of the public defender's office on October 6, 1999, an entire year before the office's reappointment. Hence, it is clear to this court that the public defender began to represent Doby officially on September 30, 1999. Doby's own testimony supports this conclusion. He testified that a woman who stated that she was appointed to represent him met with him after he was arrested and brought back to Arkansas in May 2000, but that she left after he said he wanted to talk to a lawyer. He apparently was referring to retaining counsel which the circuit court gave him two opportunities to consummate at arraignments on June 5, 2000, and July 10, 2000.

Doby cites this court to Rule 17.3(a) of the Rules of Criminal Procedure for the proposition that, following a discovery motion, the prosecutor was under a duty to obtain materials in the possession of other governmental units and provide that information to defense counsel. Rule 17.3(a) reads:

> (a) The prosecuting attorney shall use diligent, good faith efforts to obtain material in the possession of other governmental personnel which would be discoverable if in the possession or control of the prosecuting attorney, upon timely request and designation of material or information by defense counsel.

Doby, accordingly, maintains that it was the prosecutor's duty to assemble all discoverable material and transmit that information to defense counsel following a timely request. Doby contends that that was not done. Instead, public defender Teri Chambers testified at the speedy-trial hearing that she made a telephone request to Garfield Bloodman, chief deputy prosecuting attorney, for the material at issue, which included the medical examiner's report, crime lab reports, and crime scene information. Mr. Bloodman, however, could only recall a letter dated October 30, 2000, from Teri Chambers requesting that material. This request was made five days after she had moved the circuit court to continue Doby's trial. Chambers later wrote to the Pine Bluff Police Department, requesting information relating to the case. She contends that her office did not have sufficient information to defend Doby until March 2001.

Rule 17.3(b) gives defense counsel additional recourse for obtaining discoverable material from a prosecutor:

> (b) If the prosecuting attorney's efforts are unsuccessful, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel where the material or other governmental personnel are subject to the jurisdiction of the court.

In this case, Teri Chambers, as public defender, did not take this second step on behalf of Doby. Moreover, she testified that she made a tactical decision to request a continuance instead of going to trial and moving to exclude State's evidence not furnished to her.

■ The problem with Doby's position, as we see it, is that the State Public Defender began representing him on September 30, 1999, and filed a discovery motion for him on October 6, 1999. In May 2000, a public defender also visited him in jail, according to his testimony, and she was rebuffed. However, nothing had been done by the public defender's office to complete discovery prior to that time, even though that office was never relieved as counsel and a discovery motion was pending. Had the public defender's office pursued discovery completion much earlier than it did, the discovery problem could have been averted. It is true that the public defender's office knew Doby did not want its representation at least by June 5, 2000, and that he was interested in private counsel. It is also true that the public defender was reappointed on October 13, 2000. But the critical point is that Doby had appointed counsel all along in the form of the public defender's office, which could have pursued the Rule 17.3(b) remedies much earlier than it did. In this court's view, the public defender's office should have pursued its October 6, 1999 discovery motion even though Doby had not been apprehended. Had it done so, it would have learned of the missing items. To now assert that this time after October 26, 2000, should be charged to the State because of incomplete discovery is not persuasive.

The time period involved here is 173 days. We believe that time is appropriately charged to Doby.

f. *April 17, 2001, to October 23, 2001 — 189 Days.*

■ The continuance from April 17, 2001, until January 28, 2002, was chargeable to the State by agreement of both parties, after the State withdrew its waiver of the death penalty. The true period at issue, however, is the period from April 17, 2001, until October 23, 2001, when Doby filed his speedy-trial motion. *Moody v. Arkansas County Circuit Court, supra; Ibsen v. Plegge, supra.* That period totals one hundred and eighty-nine days. This period is chargeable to the State, and, again, the State makes no argument to the contrary.

### g. Summary

We summarize our speedy-trial analysis from the date of the criminal charges being brought, June 7, 1999, to the date of Doby's speedy-trial motion, October 23, 2001, as follows:

| Time Charged to State | Time Excluded |
|---|---|
| May 4, 2000—June 5, 2000: **32 days** | July 7, 1999—May 4, 2000: **302 days** |
| Aug. 7, 2000—Oct. 26, 2000: **80 days** | June 5, 2000—Aug. 7, 2000: **63 days** |
| Apr. 17, 2001—Oct. 23, 2001: **189 days** | Oct. 26, 2000—Apr. 17, 2001: **173 days** |
| Total: **301 days** | Total: **538 days** |

 Because the time charged to the State is less than twelve months, we hold that no violation of our speedy-trial rule occurred and that Doby is not entitled to a writ of prohibition.

## II. Right to Counsel

Doby next contends that with respect to the hearing held on October 13, 2000, he was not represented by an attorney, which violated his Sixth Amendment right to counsel. The State counters that a petition for a writ of prohibition is not the proper vehicle for raising curtailment of one's right to counsel. Rather, the State contends that this issue is one that is cognizable only on direct appeal. Therefore, it should not be addressed in a petition for extraordinary relief.

 This court has held that prohibition operates to prevent an action from occurring and " . . . will not lie for actions already taken." *Ballard v. Clark County Circuit Court*, 347 Ark. 291, 293, 61 S.W.3d 178, 180 (2001) (citing *May Const. Co., Inc. v. Thompson*, 341 Ark. 879, 20 S.W.3d 345 (2000)). In the case at hand, the violation complained of, which was Doby's lack of counsel at the October 13, 2000 hearing, had already taken place. Hence, prohibition does not lie to correct the prior alleged defect in the proceedings. *Ballard v. Clark County Circuit Court, supra.*

Petition denied.